IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

| | |
|---|---|
| GARY G. NICHOLS,            ) | |
|       Plaintiff,         ) | |
|                          ) | |
| v.                          ) | CIVIL ACTION NO. 2:15-03716 |
|                          ) | |
| CAROLYN. W. COLVIN,         ) | |
| Acting Commissioner of Social Security,  ) | |
|       Defendant.        ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. By Standing Orders entered March 26, 2015, and January 5, 2016 (Document Nos. 4 and 13.), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the parties' cross-Motions for Judgment on the Pleadings. (Document Nos. 11 and 12.)

The Plaintiff, Gary G. Nichols (hereinafter referred to as "Claimant"), filed applications for DIB and SSI on December 2 and 13, 2011 (protective filing date), respectively, alleging disability as of March 1, 2009, due to high blood pressure, dizziness, back problems, hip problems, and sleeping problems.[1] (Tr. at 54, 218, 219-21, 222, 223-30, 293, 307.) The claims were denied initially and upon reconsideration. (Tr. at 93-100, 101-10, 111-12, 113-19, 120-28, 129-30, 133-

---

[1] On his form Disability Report - Appeal, dated July 10, 2012, Claimant asserted that he had increased back problems, which resulted in limited mobility. (Tr. at 346.)

35, 1239-41, 144-46, 150-52, 156-58, 160-62, 163-65, 167-69.) On July 9, 2012, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 170-71.) A hearing was held on September 24, 2013, before the Honorable Stanley Petraschuk. (Tr. at 67-92.) By decision dated October 29, 2013, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 54-63.) The ALJ's decision became the final decision of the Commissioner on January 28, 2015, when the Appeals Council denied Claimant's request for review. (Tr. at 1-6.) Claimant filed the present action seeking judicial review of the administrative decision on March 26, 2015, pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2014). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§

2

404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2014). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date, March 1, 2009. (Tr. at 56, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from "degenerative disc disease and joint pain" which were severe impairments. (Tr. at 56, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 57, Finding No. 4.) The ALJ then found that Claimant had the residual functional capacity for medium work, as follows:

> [C]laimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except he can occasionally climb ramps, stairs, ladders, ropes, and scaffolds. He can occasionally kneel, crouch, crawl and stoop, but must avoid concentrated exposure to extreme cold, extreme heat, vibration, and hazards.

(Tr. at 57, Finding No. 5.) At step four, the ALJ found that Claimant was unable to perform his past relevant work. (Tr. at 61, Finding No. 6.) On the basis of testimony of a Vocational Expert

3

("VE"), taken at the administrative hearing, the ALJ concluded that Claimant could perform jobs such as janitorial work, a stock clerk, and a hand packer, at the unskilled, medium level of exertion; as a sorter and price maker, at the unskilled, light level exertion; and as a sorter, at the unskilled, sedentary level of exertion. (Tr. at 61-62.) On this basis, benefits were denied. (Tr. at 62, Finding No. 11.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on January 29, 1969, and was 44 years old at the time of the administrative hearing on September 24, 2013. (Tr. at 61, 72, 219, 223.) The ALJ found that

Claimant had at least a high school education and was able to communicate in English. (Tr. at 61, 73, 306, 308.) In the past, he worked as a construction worker and warehouse worker. (Tr. at 61, 73-74, 87-88, 302-05, 308.)

The Medical Record

The Court has considered all evidence of record, including the medical evidence and will summarize it and discuss it below in relation to Claimant's arguments.

On January 12, 2009, Claimant presented to Dr. Andrew T. Hughes, D.O., at Camden Clark Memorial Hospital, with complaints of elevated blood pressure and a funny feeling over him the last several days. (Tr. at 389.) Claimant reported that he was not taking his prescribed Lisinopril. (Id.) Dr. Hughes observed some discomfort in the upper left lateral aspect of his pectoralis area, without radiation or pressure. (Id.) Physical examination was unremarkable and his blood pressure improved with Lordine and Norvasc. (Tr. at 390.) A chest x-ray revealed a mildly prominent heart, but otherwise no acute infiltrate. (Tr. at 388.)

On February 25, 2009, Claimant presented to Dr. Jeffrey Braham, M.D., on follow-up exam after his visit to the emergency room for high blood pressure and a flutter in his chest. (Tr. at 416.) Claimant denied chest pain and reported that blood pressure reading outside the office since his last visit were in the target range. (Id.) Physical exam was unremarkable and Dr. Braham assessed essential hypertension benign and noted that his blood pressure had improved. (Tr. at 417.) Claimant requested a medication change due to costs and therefore, he was prescribed Lisinopril. (Id.) On June 5, 2010, Claimant presented to Ohio Valley Medical Quick Care, with sinus symptoms. (Tr. at 391-92.) He was given an antibiotic and Lisinopril. (Tr. at 392.) On September 29, 2011, Claimant again presented to Dr. Braham with complaints of hypertension. (Tr. at 414-15.) Physical findings were unremarkable and Dr. Braham noted that he refused any

further testing due to lack of insurance. (Tr. at 415.)

Dr. Rakesh Wahi, M.D., conducted a consultative examination on February 13, 2012, at the request of the West Virginia Disability Determination Service. (Tr. at 397-403.) Claimant alleged high blood pressure, dizziness, and back, hip, and sleeping problems. (Tr. at 397.) Claimant reported a history of construction work that resulted in multiple, cumulative episodes of trauma to his back, as well as a motor vehicle accident, in which the vehicle he was driving was involved in a head-on collision travelling at 50 miles an hour. (Id.) Since then, Claimant reported that he suffered back pain. (Id.) Claimant stated that he stopped doing construction work several years ago due to back pain. (Tr. at 398.) He reported that he was limited to walking for five minutes due to back pain with radiation into his lower extremities, with numbness. (Tr. at 397.) He further reported that he could walk only 30 minutes, could sit for one hour, and was able to drive only short distances. (Id.) Claimant stated that he got very little sleep, spent most of the day on the couch, had difficulty laying on his back, and frequently used a crutch on the right side due to back pain, but was able to carry out his daily activities. (Id.) He further reported frequent dizzy spells due to poor blood pressure control. (Tr. at 398.) Claimant also reported occasional headaches that lasted one and half hours that responded to Ibuprofen. (Id.)

On physical examination, Dr. Wahi observed that Claimant limped slightly, was able to get on and off the exam table without difficulty, was unable to squat or walk on his heels, but was able to walk on his toes. (Tr. at 399.) Claimant had normal sensation and reflexes, and full range of bilateral upper extremity motion, but was unable to make a full fist with his left hand due to swelling of his little and middle fingers from what he said was poison ivy he contracted five days prior. (Id.) Grip strength was 4/5 on the left and 5/5 on the right. (Id.) Fine manipulation was intact. (Id.) Examination of the lower extremities revealed normal ranges of motion except for diminished

6

hip motion with pain and radiation to his back. (Id.) Examination of the spine revealed a small lipoma slightly to the right of the midline at C7. (Id.) He had considerable spasm of the paraspinal muscles on the right with flexion and extension of 60 degrees. (Id.) Straight leg raising test was 60 degrees on the right and 80 degrees on the left in sitting position, and 60 degrees bilaterally in supine position. (Id.) Dr. Wahi assessed poorly controlled hypertension and traumatic arthritis involving the back. (Tr. at 400.) He opined that Claimant's severe back problems resulted in "severe limitation of function" and that he was able to stand, sit, and walk only very limited periods of time. (Id.) Furthermore, Claimant's subjective symptoms were accompanied by considerable loss of range of motion, as well as muscle spasm and limping. (Id.)

On March 6, 2012, Dr. Curtis Withrow, M.D., a State agency reviewing physician, completed a Physical RFC Assessment, on which he opined that Claimant could perform medium exertional level work that occasionally required climbing, stooping, kneeling, crouching, and crawling and allowed him to avoid concentrated exposure to temperature extremes, vibration, fumes, odors, dusts, gases, poor ventilation, and hazards. (Tr. at 106-08.) In support of his opinion, Dr. Withrow cited Dr. Wahi's evaluation and noted that there was evidence of significant painful limitation of range of motion of the lower back with radiation of pain into the lower extremities. (Tr. at 107.)

Claimant sought chiropractic treatment from November 8, 2004, through May 5, 2012. (Tr. at 404-13.) On April 16, 2010, Claimant reported on and off hip pain. (Tr. at 405.) Claimant sought further treatment on September 12, 2012, October 21, 2012, August 28, 2013, and August 23, 2013. (Tr. at 421-22.)

On May 7, 2012, Claimant returned to Dr. Braham for a re-check of hypertension. (Tr. at 419-20.) Physical exam again was unremarkable and Dr. Braham assessed essential hypertension

7

benign and continued his medications and recommended a low sodium diet. (Tr. at 420.) On June 26, 2013, Claimant presented to Dr. Braham for a one year check-up, at which time Claimant reported that Lisinopril worked better to control his blood pressure. (Tr. at 426.) He also reported a backache. (Id.) Dr. Braham assessed essential hypertension benign, prescribed Voltaren 75mg, and ordered an x-ray of his lumbar spine. (Tr. at 427.) The x-ray of Claimant's lumbar spine on August 16, 2013, was negative. (Tr. at 428.) On August 22, 2013, Claimant declined to attend physical therapy. (Id.)

An MRI of Claimant's pelvis on September 12, 2013, demonstrated no acute abnormality of the pelvis or hips and an aspherical morphology of the femoral heads bilaterally secondary to osseous ridges at the femoral head/neck junctions. (Tr. at 431-32.) The MRI of his lumbar spine revealed moderate facet degeneration at L5-S1 in combination with disc bulging and spur, which resulted in moderate bilateral foraminal narrowing. (Tr. at 433-34.) He also had a small disc protrusion in the right far lateral region of S1, which may have contacted the right S1 nerve root. (Tr. at 434.)

Claimant's Challenges to the Commissioner's Decision

Claimant first alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ failed to comply with the Regulations in evaluating the opinion of Dr. Wahi, a State agency physical consultative examiner. (Document No. 11 at 5-8.) Claimant asserts that Dr. Wahi was the only physician of record who performed a consultative evaluation, yet the ALJ summarily gave little weight to his opinion because it generally was based on Claimant's subjective complaints of pain. (Id. at 7.) Furthermore, the ALJ improperly rejected Dr. Wahi's opinion based on the lack of treatment records of record, despite having acknowledged that Claimant lacked either medical insurance or financial means to afford treatment. (Id.)

8

Consequently, Claimant contends that the ALJ failed to articulate the factors set forth in the Regulations in evaluating Dr. Wahi's opinion. (Id. at 8.) The ALJ further erred in giving partial weight to two non-examining State agency consultants, who did not have the benefit of later submitted radiological evidence of significant lumbar spine and bilateral hip abnormalities. (Id. at 7.)

In response, the Commissioner asserts the ALJ reasonably explained that Dr. Wahi's opinion was entitled only little weight because it was not supported by the evidence and was based on Claimant's self-reports of pain. (Document No. 12 at 7-8.) The Commissioner notes that Dr. Wahi's opinion was not entitled controlling weight because he was not Claimant's treating physician. (Id. at 7.) The Commissioner contends therefore, that the ALJ correctly applied the factors set forth in the Regulations and determined that Dr. Wahi's opinion was entitled only little weight. (Id.) Despite Claimant's claims of lack of treatment due to lack of insurance and financial means, the Commissioner notes that the record reflects his treatment for high blood pressure, without any mention of back pain. (Id.) At the least, the Commissioner asserts that Claimant could have mentioned the back pain or could have sought free or low cost treatment. (Id.) Furthermore, despite Dr. Wahi's statements of multiple traumas and a serious car accident, the record failed to reflect any such evidence. (Id.) The Commissioner asserts that the ALJ properly found that Dr. Wahi relied on Claimant's subjective complaints as he accepted Claimant's statements of limitation, without question. (Id. at 7-8.) Dr. Wahi also failed to explain his contradictory exam findings with Claimant's subjective reports. (Id. at 8.) Finally, the Commissioner asserts that the ALJ properly considered and weighed Dr. Withrow's opinion and found that it was entitled some weight. (Id.) Although Claimant disagrees with the ALJ's analysis, it does not mean that it was in error. (Id.)

Claimant also contends that the ALJ's decision is not supported by substantial evidence because the ALJ erred in assessing his pain and credibility because he failed to follow the analysis set forth in the Rulings and Regulations. (Document No. 11 at 8-10.) Claimant asserts that the ALJ focused on Claimant's failure to receive consistent medical treatment without truly considering the impact of his lack of medical insurance and financial means to pay for treatment. (Id. at 9.) Claimant further asserts that the ALJ failed to discuss Claimant's statements that he no longer was able to play with his children or perform construction work due to dizziness and near falls. (Id. at 10.)

In response, the Commissioner asserts that the ALJ's credibility assessment is supported by the substantial evidence of record. (Document No. 12 at 9.) Although Claimant alleged significant back pain, he failed to mention the pain when he saw the doctor. (Id.) The Commissioner further notes that Claimant's reported activities were extensive and that Claimant continued to work on a part-time basis. (Id.) Accordingly, the Commissioner contends that the ALJ's credibility assessment is supported by substantial evidence. (Id.)

Analysis.

1. Medical Opinions.

Claimant first alleges that the ALJ erred in giving little weight to Dr. Wahi's opinion. (Document No. 11 at 5-8.) Every medical opinion received by the ALJ must be considered in accordance with the factors set forth in 20 C.F.R. §§ 404.1527(d) and 416.927(d) (2014). These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) various other factors. Additionally, the Regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating

10

source's opinion." Id. §§ 404.1527(d)(2) and 416.927(d)(2).

Under §§ 404.1527(d)(1) and 416.927(d)(1), more weight is given to an examiner than to a non-examiner. Sections 404.1527(d)(2) and 416.927(d)(2) provide that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). Sections 404.1527(d)(2)(I) and 416.927(d)(2)(I) state that the longer a treating source treats a claimant, the more weight the source's opinion will be given. Under §§ 404.1527(d)(2)(ii) and 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Sections 404.1527(d)(3), (4) and (5) and 416.927(d)(3), (4), and (5) add the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty). Unless the ALJ gives controlling weight to a treating source's opinion, the ALJ must explain in the decision the weight given to the opinions of state agency medical or psychological consultants. 20 C.F.R. §§ 404.1527(f)(2)(ii) and 416.927(f)(2)(ii) (2014). The ALJ, however, is not bound by any findings made by state agency medical or psychological consultants and the ultimate determination of disability is reserved to the ALJ. Id. §§ 404.1527(f)(2)(i) and 416.927(f)(2)(i).

In his decision, the ALJ assigned little weight to Dr. Wahi's opinions, as they were based generally on Claimant's subjective reports of pain and were not supported by the objective evidence of record. (Tr. at 59, 61.) Dr. Wahi was not Claimant's treating physician, and therefore, pursuant to 20 C.F.R. §§ 404.1527 and 416.927, his opinion was not entitled controlling weight.

The ALJ therefore, proceeded to consider Dr. Wahi's opinion pursuant to the factors set forth in the Regulations and explained the weight accorded Dr. Wahi, pursuant to 20 C.F.R. §§ 404.1527(f)(2)(ii) and 416.927(f)(2)(ii). The ALJ first acknowledged that Dr. Wahi conducted a consultative evaluation of Claimant, and referenced no further evaluation or treatment by Dr. Wahi. (Tr. at 58.) The ALJ next found that Dr. Wahi's opinion was inconsistent with, and therefore, unsupported by the substantial evidence of record. (Tr. at 57-61.) As discussed above, the medical evidence established that Claimant received minimal treatment from a chiropractor, whose notes provided very little by means of symptoms or treatment. (Tr. at 59, 404-13, 421-22.) The record also established that Claimant sought treatment from Dr. Braham primarily for elevated blood pressure. (Tr. at 58, 414-20, 426-27.) Claimant failed to complain to Dr. Braham of any back pain until June 26, 2013. (Tr. at 58, 426-27.) Even then, x-rays were negative and Claimant opted not to attend physical therapy. (Tr. at 428.) A subsequent lumbar spine MRI revealed mild degenerative disc disease at S1, moderate facet degeneration at L5-S1, and a small disc bulge at S1. (Tr. at 59, 433-34.) Nevertheless, and as the ALJ found, these findings suggested a severe impairment, but "the lack of treatment and documented clinical findings" did not correlate to the level of limitation alleged by Claimant. (Tr. at 59.)

Contrary to the substantial evidence of record, Dr. Wahi noted Claimant's reports of multiple back traumas and a serious car crash that all resulted in damage to his back. (Tr. at 58, 397.) The medical record however, failed to contain any objective evidence, including treatment records or reports of pain to Claimant's treating physician. Furthermore, Claimant reported disabling pain, despite having not reported it to Dr. Braham, before or immediately after, Dr. Wahi's evaluation. The limitations assessed by Dr. Wahi were based essentially on Claimant's

12

subjective reports of limitations, as well as Dr. Wahi's observation of a slight limp, muscle spasms, and loss of range of motion. (Tr. at 59, 399-400.) The ALJ found however, that Dr. Wahi's few positive objective findings were based on Claimant's subjective reports and did not correlate with the evidence contained in Dr. Braham's or the chiropractor's treatment notes.

Contrary to Claimant's allegations, the ALJ acknowledged that he lacked medical insurance, which hindered his ability to seek treatment, but found that the objective findings and reports of pain even when he sought treatment, indicated that Claimant's "allegations have, at times, been overstated." Furthermore, when Claimant did complain of back pain, the ALJ found that such symptoms were vague and failed to include specificity or precipitating factors. (Tr. at 59.) The ALJ further noted that Claimant's activities and work history, including his then current part-time job, detracted from the credibility of his disabling allegations. (Tr. at 60.) The undersigned therefore finds, that the ALJ properly considered the factors set forth in the Regulations and Rulings in according little weight to Dr. Wahi's opinion and that his decision is supported by substantial evidence of record.

The undersigned further finds that the ALJ's decision to give Dr. Withrow's opinion some weight is supported by substantial evidence. Dr. Withrow acknowledged Claimant's limitations that resulted from painful range of low back motion, but found that he was capable of performing medium exertional level work with postural and environmental limitations. (Tr. at 60-61, 106-08.) The ALJ found that this opinion was consistent with the evidence of record, although the ALJ extended the duration of the severity of Claimant's impairment back to the date last insured. (Tr. at 61.) Accordingly, the undersigned finds that the ALJ's decision respecting the opinion evidence of record is supported by substantial evidence.

13

2. <u>Pain & Credibility</u>.

Claimant also alleges that the ALJ erred in assessing his pain and credibility. (Document No. 11 at 8-10.) A two-step process is used to evaluate a claimant's statements and to determine whether a claimant is disabled by pain or other symptoms. First, objective medical evidence must show the existence of a medical impairment that reasonably could be expected to produce the pain or symptoms alleged. 20 C.F.R. §§ 404.1529(b) and 416.929(b) (2014); SSR 96-7p; <u>See also</u>, <u>Craig v. Chater</u>, 76 F.3d 585, 594 (4th Cir. 1996). If such an impairment is established, then the intensity and persistence of the pain or symptoms and the extent to which they affect a claimant's ability to work must be evaluated. <u>Craig</u>, 76 F.3d at 595. When a claimant proves the existence of a medical condition that could cause the alleged pain or symptoms, "the claimant's subjective complaints [of pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence." <u>Mickles v. Shalala</u>, 29 F.3d 918, 919 (4th Cir. 1994). Objective medical evidence of pain should be gathered and considered, but the absence of such evidence is not determinative. <u>Hyatt v. Sullivan</u>, 899 F.2d 329, 337 (4th Cir. 1990). A claimant's symptoms, including pain, are considered to diminish her capacity to work to the extent that alleged functional limitations reasonably are consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4) (2014). Additionally, the Regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons. . . . Factors relevant to your symptoms, such as pain, which we will consider include:
>
> (i) Your daily activities;
>
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms.
>
> (iii) Precipitating and aggravating factors;

14

> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
>
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
>
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and
>
> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) (2014).

> SSR 96-7p repeats the two-step regulatory provisions:
>
> > First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. * * * If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic work activities.
> >
> > Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p, 1996 WL 374186 (July 2, 1996). SSR 96-7p specifically requires consideration of the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms" in assessing the credibility of an individual's statements. Significantly, SSR 96-7p requires the adjudicator to engage in the credibility assessment as early as step two in the sequential analysis; i.e., the ALJ must consider the impact of the symptoms on a

15

claimant's ability to function along with the objective medical and other evidence in determining whether the claimant's impairment is "severe" within the meaning of the Regulations. A "severe" impairment is one which significantly limits the physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) and 416.920(c).

Craig and SSR 96-7p provide that although an ALJ may look for objective medical evidence of an underlying impairment capable of causing the type of pain alleged, the ALJ is not to reject a claimant's allegations solely because there is no objective medical evidence of the pain itself. Craig, 76 F.3d at 585, 594; SSR 96-7p ("the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record"). For example, the allegations of a person who has a condition capable of causing pain may not be rejected simply because there is no evidence of "reduced joint motion, muscle spasms, deteriorating tissues [or] redness" to corroborate the extent of the pain. Id. at 595. Nevertheless, Craig does not prevent an ALJ from considering the lack of objective evidence of the pain or the lack of other corroborating evidence as factors in her decision. The only analysis which Craig prohibits is one in which the ALJ rejects allegations of pain solely because the pain itself is not supported by objective medical evidence.

> In Hines v. Barnhart, the Fourth Circuit stated that
>
> Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers.

453 F.3d 559, 565 n.3 (*citing* Craig, 76 F.3d at 595).

The ALJ noted the requirements of the applicable law and Regulations with regard to assessing pain, symptoms, and credibility. (Tr. at 57-58.) The ALJ found at the first step of the analysis that Claimant's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Tr. at 58.) Thus, the ALJ made an adequate threshold finding and proceeded to consider the intensity and persistence of Claimant's alleged symptoms and the extent to which they affected

16

Claimant's ability to work. (Tr. at 57-61.) At the second step of the analysis, the ALJ concluded that Claimant's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (Tr. at 16.)

In discrediting Claimant's credibility, the ALJ addressed the factors set forth in the Regulations. The ALJ addressed Claimant's daily activities and found that although his reported activities suggested disability, the activities could not be objectively verified and if he truly was as limited as alleged, the ALJ was unable to attribute that degree of limitation to his medical condition, in view of the "relatively weak medical evidence." (Tr. at 60.) The ALJ acknowledged Claimant's reports of back and hip pain, his inability to sleep due to pain, that the pain was constant and worsened with physical activity, and that he was unable to find a comfortable position. (Tr. at 58.) Despite such severe allegations of pain, the ALJ noted that Claimant failed to take any prescribed pain medications or report such disabling pain on multiple occasions to his treating physician. (Tr. at 58-60.) As mentioned above, Claimant declined physical therapy and essentially utilized no other means in an attempt to alleviate pain. (Id.) The ALJ acknowledged Claimant's work history and noted that he was able to sustain part-time work. (Tr. at 60.) Moreover, the ALJ noted that the record failed to contain any physical restrictions by Claimant's treating physician. (Id.) The ALJ determined therefore, that Claimant's failure to mention pain on multiple occasions, his vague description of his pain, and the lack of convincing details regarding his pain, such as precipitating factors, made him unpersuasive and not entirely credible. In view of the foregoing, the undersigned finds that the ALJ properly considered the pertinent Rulings and Regulations in assessing Claimant's credibility, and that his decision is supported by the substantial evidence of record.

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court

**DENY** the Plaintiff's Motion for Judgment on the Pleadings (Document No. 11.), **GRANT** the Defendant's Motion for Judgment on the Pleadings (Document No. 12.), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Johnston, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to send a copy of the same to counsel of record.

Date: May 25, 2016.

_____
Omar J. Aboulhosn
United States Magistrate Judge

18